AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia ▼

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:21 MJ 126
)
301 Greenway Avenue )
Marion, Virginia 24354 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

301 Greenway Avenue, Marion, Virginia 24354 - to include the residence, curtilage, garages, outbuildings, campers, persons present and vehicles present. Attachment A consists of a photograph of the residence.

located in the _____Western_____ District of _____District_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC 846 | Conspiracy to Distribute Controlled Substances |
| 21 USC 843(b) | Use of Any Communication Facility in Committing Drug Offenses |

The application is based on these facts:
See Attachment C

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Zachary A.W. King, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone
on 10/21/21 _____ *(specify reliable electronic means)*.

Date: 10/21/21

_____
*Judge's signature*

City and state: Abingdon, Virginia        Pamela M. Sargent, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

*301 Greenway Avenue, Marion, Virginia 24354*

I, Zachary A. W. King, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for authorization to seek, and to seize evidence and instrumentalities of the distribution of methamphetamine, a Schedule II Controlled Substance. As a result of participating in this investigation and reviewing information relevant to this investigation, and based on my training and experience, this Affiant believes there is evidence of violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance in Schedule I or II with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) maintained at 301 Greenway Avenue, Marion, Virginia 24354 (the Subject Residence).

2. I am a Task Force Officer (TFO) with The Federal Bureau of Investigation (FBI) and have been so employed since July 2021. I am currently assigned to the Richmond Division, Bristol Resident Agency of the FBI, and am responsible for investigating controlled substance violations involving the

1

trafficking and subsequent distribution of those substances. I am also a Narcotics Investigator for the Smyth County Sheriff's Office, and I have received specialized training in investigations involving the trafficking of controlled substances and the proceeds from the sale of controlled substances. I have also received training on the identification and interdiction of controlled substances. I have been with the Smyth County Sheriff's Office since August of 2016, and I have been an Investigator for approximately the last two years. Before I started working in civilian law enforcement, I worked for six years as a military police officer in the United States Air Force. I was honorably discharged from the Air Force in December 2013.

3. Based on my training and experience, my own investigation of this matter, information that I have learned from other law enforcement officers, and communication with a confidential human source (CHS), I submit that there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), have been committed by Brian Cory Hoover (HOOVER), who resides at the Subject Residence. I further submit that there is probable cause to believe that

2

evidence, and instrumentalities of such violations will be found at the Subject Residence.

4. As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

## APPLICABLE LAW

5. Pursuant to 21 U.S.C. § 843(b), it is "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II."

6. Distribution of controlled substances, in violation of 21 U.S.C. § 841(a) constitutes "a felony under any provision of this subchapter," as cited above. Methamphetamine is classified as a Schedule II Controlled Substance under the Controlled Substance Act Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

7. A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication." 21 U.S.C. § 843(b).

8. Section 846 of Title 21 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## INVESTIGATION AND PROBABLE CAUSE

9. On or about August 20, 2021, I engaged the Drug Enforcement Administration (DEA) and the FBI for support in connection with an ongoing investigation involving the trafficking and subsequent distribution of methamphetamine in Smyth County. The methamphetamine was suspected to originate from a source of supply in Atlanta, Georgia. Law enforcement identified multiple people who appeared to be engaged in the trafficking and subsequent distribution of methamphetamine.

10. As part of that investigation, on September 22, 2021, law enforcement obtained information from a CHS that HOOVER was actively engaged in the transport of large amounts of methamphetamine and other unspecified narcotics from a Hispanic source of supply in Georgia. The CHS further provided information that HOOVER was also engaged in acts of violence, including the assault of local retail narcotics dealers who were indebted to him as a result of illicit drug activity. Additionally, the CHS identified several individuals who were

4

affiliated with HOOVER, and actively distributing methamphetamine and other narcotics that were sourced from HOOVER.

11. On or about September 28, 2021, investigating law enforcement discovered that HOOVER was encountered by law enforcement officers of the Bristol Tennessee Police Department (BTPD) on August 28, 2021. The encounter resulted in the arrest and subsequent search of HOOVER. The search led to the discovery of approximately one ounce of methamphetamine, $1,750.00 in U.S. currency and an iPhone cellular telephone. BTPD initiated an investigation and conducted a forensic analysis of the iPhone cellular telephone discovered during the encounter.

12. On October, 01, 2021, investigating law enforcement reached out to the BTPD and obtained a copy of the forensic extraction report on HOOVER's iPhone cellular telephone. An analysis of the report revealed multiple text-message chains between HOOVER and other co-conspirators that are indicative of the trafficking and subsequent distribution of methamphetamine. The conversations were communicated utilizing the Facebook Messenger digital application, the WhatsApp digital application as well as through the cellular telephone provider by way of conventional text-message services. Several of the text-based conversations involving narcotics distribution include HOOVER directing potential customers to his mother's residence, known by law enforcement

5

to be located at 301 Greenway Avenue, Marion, Virginia (the Subject Residence.) The cellular telephone report further revealed photographs of exchange between HOOVER and a suspected Georgia-based source of supply for narcotics. In particular law enforcement identified a conversation that occurred on August 22, 2021 between HOOVER and the aforementioned source of supply. During the conversation, HOOVER discussed purchasing $1,350 worth of cocaine, and $30,000 worth of counterfeit Oxycodone-hydrochloride pills. The conversation also included dialogue regarding a previous purchase of suspected methamphetamine, during which HOOVER disclosed that the methamphetamine in question was unusually wet.

13. On October 13, 2021, law enforcement officers of the Washington County Sheriff's Office (WCSO) and the Holston River Regional Narcotics Drug Force (HRDTF), conducted a traffic stop on a white in color Chrysler 300 sedan near the Interstate 81 Northbound mile marker for a traffic violation. WCSO identified the driver and sole occupant to be HOOVER. Over the course of the traffic stop probable cause was developed to search the vehicle, and HOOVER's person. As a result of the search law enforcement discovered suspected cocaine and methamphetamine on HOOVER's person, in addition to a Samsung cellular telephone. HOOVER was arrested and transported to the WCSO in Abingdon,

6

Virginia where investigators of the HRDTF, Smyth County Sheriff's Office and FBI conducted an interview. The interview was audio and video recorded.

14. HOOVER was advised of his Miranda Rights, and agreed to speak with investigating law enforcement without an attorney present. Over the course of the interview, HOOVER disclosed that he was actively involved in the trafficking and subsequent distribution of methamphetamine in Southwest Virginia. According to HOOVER, since July, 2021 he routinely transported six to ten pounds of methamphetamine twice monthly from a source of supply in Atlanta, Georgia to Southwest Virginia. HOOVER further indicated, that on occasion he would make the trip more frequently, if able to gather the necessary cash to do so. HOOVER stated that he paid $2,500 per pound of methamphetamine, and generally met with his Georgia-based source of supply with $25,000. Furthermore, HOOVER explained that he had last trafficked methamphetamine from Georgia into Southwest Virginia in early October, 2021. Lastly, HOOVER disclosed his residence to be located at 301 Greenway Avenue, in Marion, Virginia 24354 (the Subject Residence.), but was actively distributing the methamphetamine throughout Southwest Virginia.

15. On October 19, 2021, a forensic analysis and extraction was performed on the Samsung cellular telephone seized during the traffic stop on October 13, by the Virginia State Police. A review of the extracted contents led

law enforcement to discover two videos displaying multiple (more than five) large Ziploc-style plastic baggies that further contain a white crystal substance. The videos were found to be maintained the WhatsApp digital application, and last modified October 11, 2021. Additionally, the analysis revealed stored location data from the cellular phone indicating that the device was located in the Atlanta, Georgia metropolitan area on September 28, 2021.

16. This Affiant is aware based on his training, experience and conversations with other law enforcement officers that individuals who distribute, and or conspire to distribute methamphetamine typically maintain methamphetamine, methamphetamine distribution paraphernalia, records, telephone numbers, digital media and other documents (as described in Attachment B) on their persons, inside of their residences (which includes related garages, outbuildings, barns, campers and or other recreational vehicles), as well as inside their vehicles, and inside of vehicles registered to other person when those vehicles are parked at the conspirator's residence.

17. This Affiant is further aware based on his training, experience and conversations with other law enforcement officers that persons who distribute, and or conspire to distribute methamphetamine routinely have individuals who are customers, and or co-conspirators present at their residences, related garages, outbuildings, barns, campers and other recreational vehicles. These customers and

co-conspirators are typically drug users and drug traffickers themselves, as they generally distribute some (if not all) of the methamphetamine they purchase in order to generate a profit, supplement their own drug use, or both. These customers and co-conspirators often illegally possess methamphetamine and drug use paraphernalia along with documentation (pertaining to the acquisition and subsequent distribution of methamphetamine), and or other items (as listed and explained on Attachment B). The aforementioned individuals often keep these items on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked or present at the conspirator's residence (the Subject Residence).

## CONCLUSION

18. Based on the foregoing information, I believe that probable cause exists that evidence of violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) will be found inside the Subject Residence, which is located within the Western District of Virginia. Accordingly, I request that the Court issue the proposed search warrant.

19. The government will execute this warrant by serving the warrant on HOOVER and/or other occupants inside of the residence, after properly announcing the presence of law enforcement and the intent to execute a search of

9

the residence. This warrant will be executed during daylight hours, between 6:00AM and 10:00PM.

## REQUEST FOR SEALING

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Zachary A. W. King
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to telephonically this 21st day of October, 2021.

Pamela Meade Sargent
United States Magistrate Judge

Reviewed by: Roy F. Evans, Jr., Special Assistant U.S. Attorney

10

## ATTACHMENT A



301 Greenway Avenue,

Marion, Virginia 24354

## ATTACHMENT B

## Particular Things to be Seized

1. Methamphetamine distribution paraphernalia, including but not limited to: scales, chemical and non-chemical cutting agents, cutting materials, plastic baggies, and wrapping material.

2. Documentation, including but not limited to: books, messages, records, ledgers, notes, mail, letters, e-mails, e-mail addresses, telephone numbers, vehicle rental receipts, hotel receipts, addresses and other personal contact information relating to the transportation, distribution or procurement of methamphetamine.

3. Digital access information, including but not limited to: usernames, passwords, alias information, security keys, website access information and internet protocol (IP) addresses.

4. Photographs and videos depicting methamphetamine, its distribution or concealment, and the cash or cash equivalent proceeds of methamphetamine distribution.

5. Items or articles of personal property that tend to show ownership, dominion or control of the premises, the property within or vehicles. Such items or articles include, but are not limited to: personal identification, personal correspondence, checkbooks, notes, keys, and motor vehicle related documents such as vehicle titles and vehicle registration information.

6. Financial documents, including but not limited to: Automated Teller Machine (ATM) receipts, mobile payment service information, bank statements, cashier's checks, components of the cryptocurrency block chain ecosystem (i.e. transaction logs, personal identification numbers (PINs), passphrases, digital signatures), and or any other item demonstrating the acquisition, concealment or expenditure of assets.

7. Large amounts of paper currency, cryptocurrency (exceeding $1,000.00 in value) or other readily transportable assets, that are routinely used as cash equivalents, including but not limited to: cashier's checks, prepaid debit/credit cards and or money orders.

8. Items listed within Paragraph 2 through Paragraph 7 may be stored in electronic devices. These devices include but are not limited to: computers, external hard drives, universal serial bus (USB) flash drives, secure digital (SD) memory cards, mobile devices such as cellular telephones and tablet computers, digital cameras, and hardware wallets (which are used to store a user's cryptocurrency and private security keys.) The aforementioned items are to be seized and examined for the evidence listed in Paragraph 2 through Paragraph 7.